FILED

01/23/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0248

DA 22-0248

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2024 MT 11N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

CODY RAY TUNNELL,

      Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. DDC-2021-75
Honorable Christopher D. Abbott, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, Kristina L. Neal, Assistant Appellate Defender, Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Mardell Ployhar, Assistant Attorney General, Helena, Montana

          Kevin Downs, Lewis and Clark County Attorney, John Nesbitt, Deputy County Attorney, Helena, Montana

          Submitted on Briefs:  November 1, 2023

                   Decided:  January 23, 2024

Filed:

                        _____
                              Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      Cody Ran Tunnell (Tunnell) appeals from the April 25, 2022, Second Amended Judgment and Commitment entered by the First Judicial District, Lewis and Clark County, sentencing him to a 13 month Department of Corrections (DOC) commitment, none suspended, followed by an additional 4 years all suspended, for driving under the influence as a fourth offense, a felony in violation of § 61-8-401, MCA, and 5 years, all suspended, for criminal endangerment, a felony in violation of § 45-5-207, MCA.  We affirm.

¶3      On appeal, Tunnell presents the issue of whether the District Court erred by prohibiting the admission of a witness's prior conviction for false reporting.

¶4      On January 31, 2021, police arrested Tunnel for driving under the influence, criminal endangerment, and partner or family member assault.  A jury trial was held on January 4, 2022.  During trial, Sandra Hyer (Sandy) testified about the incident.  Additionally, three officers who responded to the scene testified, as well as Crystal Everett a forensic toxicologist, and Cody Tunnell.  Tunnell and Sandy offered differing accounts of what occurred that day.

¶5      Tunnell alleges he was living in his truck that was inoperable at the time in a Big Lots parking lot.  Tunnell claims Sandy showed up at his truck with a bottle of vodka but

2

also told investigating officer Mohr he had bought Sandy a bottle of vodka. Sandy and Tunnell sat in his truck, drinking the vodka. They got into a verbal argument that turned physical. Tunnell claims he got out of his truck to go to the bathroom and when he returned, his dog was missing. He left again to find his dog, and when he returned to his truck, Tunnell claims Sandy was screaming lying next to his truck with an injured arm.

¶6 Sandy's recounting of events was not in line with Tunnell's story. She claimed Tunnell drove up beside her vehicle and she got into his truck because it was warm, and her vehicle, which she was living in, did not have heat. She claims they drove to a casino, and she gave Tunnell money to buy some vodka. They drank the vodka together, and after they were intoxicated, she alleges they got into a physical altercation, and Tunnell physically kicked her out of his vehicle. While she tried to get up, Tunnell drove over her arm.

¶7 One of the officers that arrived at the scene, Officer Mohr, wore a body camera. The body camera footage shows that Tunnell told police "I was riding around with her," and "all of a sudden, we were riding around and . . . I parked it here." He also stated, "so I went and bought her a bottle of vodka . . . with her money." Officer Mohr also detected a strong odor of alcohol coming from Tunnell and observed his eyes were watery and bloodshot. Another officer on the scene, Officer Nimmick, observed that the hood of the truck was warm to the touch when he arrived. Tunnell refused to perform any standardized field sobriety tests, so Officer Nimmick obtained a warrant to draw Tunnell's blood. The blood draw revealed that Tunnell had a blood alcohol content of 0.157.

3

¶8     Prior to jury selection, the State indicated it would object to the introduction of Sandy's 2012 conviction for false reporting. The court indicated to Tunnell that he could not reference the conviction itself because M. R. Evid. 609 prohibited prior convictions as impeachment evidence. However, the court advised Tunell that he could cross examine Sandy about the underlying conduct and details surrounding the conviction. The court noted that whatever answer Sandy gave in response to such cross examination was the answer Tunnell had to accept.

¶9     The trial commenced, and on cross examination, Tunnell's counsel rather inartfully questioned Sandy about her prior dishonesty with police:[1]

> **[Defense]** So, Sandy, have you ever been dishonest with the police before?
>
> **[Sandy]** I can't remember. I was asked that question. I don't know if I knew what I was saying. I cannot remember at all what that was about because I consider myself—I try not to lie.
>
> **[Defense]** Okay. So in Butte in 2012 there wasn't an incident where you were dishonest with the police?
>
> **[Sandy]** I can't remember. I know I used to rent out also a room in my house, and the only thing I could think of is maybe I lied to the police and said he wasn't in the house. I don't know, that's the only thing I can think of. Because I don't think I even—I don't even remember signing anything that said that. I don't even know if I got charged for it, if I had to pay a fine or anything. But that was my handwriting, I was showed it. It was my handwriting, I did sign it.
>
> **[Defense]** So you don't recall this incident from 2012 but you remember—

---

[1] Upon Sandy expressing lack of memory, counsel did not seek to refresh her recollection by first showing her the judgment from her prior conviction and then questioning her about the surrounding circumstances.

4

**[Sandy]** Not at all. I'm thinking that—because I know that the police came to my door a couple of times and I had to get rid of those roommates because drugs and things like that, even though they lied to me and I didn't know that they were doing drugs. So there was a few times that I did lie to the police and said, no, that person isn't here and then I would kick them out. And rent, then I learned to just rent to women.

**[Defense]** So you don't recall that but you recall this night perfectly, is that correct?

**[Sandy]** Well, this, you said, happened, what, 10, 12 years ago, and a lot's happened in my life since then. A lot. And I don't—I consider myself to be a pretty honest person. In fact, all the street people will tell you she didn't lie. All the street people will say that about me.

**[Defense]** I have nothing further.

**[Sandy]** You could remind me and see what it was about, I really don't remember.

**[Defense]** I have no further questions.

The jury found Tunnell guilty of driving under the influence and criminal endangerment and not guilty for partner or family member assault.

¶10 On appeal, Tunnell argues the District Court erred by not allowing him to cross examine Sandy about her prior conviction for making a false police report. Tunnell claims M. R. Evid. 608(b) allows cross examination of a specific instance of conduct only if it is probative of truthfulness or untruthfulness. Tunnell alleges that Sandy's prior conviction for false reporting was probative of her untruthfulness and relevant to her credibility for truthfulness.

¶11 The State argues the District Court properly prohibited Tunnell from introducing evidence of Sandy's prior conviction. The State provides that M. R. Evid. 609 precludes evidence that the witness was convicted of a crime for the purpose of attacking the

5

witness's credibility. However, the State agrees that M. R. Evid. 608(b) does allow evidence of specific instances of conduct if it is probative of the witness's character for truthfulness or untruthfulness.

¶12 "We review evidentiary rulings for abuse of discretion." *State v. Bonamarte*, 2009 MT 243, ¶ 13, 351 Mont. 419, 213 P.3d 457 (citations omitted). "A court abuses its discretion when it acts arbitrarily, without employing conscientious judgment, or exceeds the bounds of reason, resulting in substantial injustice." *State v. Sanchez*, 2008 MT 27, ¶ 15, 341 Mont. 240, 177 P.3d 444.

¶13 Rule 608(b) provides that specific instances of conduct, for the purpose of attacking a witness's credibility, may not be proved by extrinsic evidence. However, subject to the district court's discretion, specific instances of conduct concerning the witness's character for truthfulness may be inquired into on cross examination of the witness if probative of their truthfulness or untruthfulness.

¶14 Rule 609 states "[f]or the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime is not admissible." The Montana Supreme Court Commission on Evidence commented that it refused to allow impeachment by evidence of a conviction of a crime "because of its low probative value in relation to credibility. The Commission does not accept as valid the theory that a person's willingness to break the law can automatically be translated into willingness to give false testimony." M. R. Evid. 609, *Annotations*, Comm'rs Note (2021). Additionally, the Commission stated, "conviction of certain crimes is probative of credibility; however, it is the specific

act of misconduct underlying the conviction, which is really relevant, not whether it has led to a conviction." M. R. Evid. 609, *Annotations*, Comm'rs Note (2021).

¶15    Here, prior to Sandy testifying, the District Court advised Tunnel that he could not introduce evidence of Sandy's prior conviction for false reporting because that would violate Rule 609. The District Court also advised Tunnel that, although he could not introduce the conviction on its face, he could inquire about the details and circumstances surrounding the conviction as permitted under Rule 608(b). On cross examination, Tunnell questioned Sandy about whether she had ever been dishonest to police. She responded that she could not remember. When further prompted about the incident in 2012, she vaguely acknowledged that "there was a few times that I did lie to the police."

¶16    Because Rule 609 prohibits evidence of prior convictions to impeach a witness, we find the District Court did not abuse its discretion by not allowing Tunnell to introduce Sandy's prior conviction for false reporting. The court correctly advised Tunnell that he could inquire about the details of the incident, as per Rule 608(b), without alluding to the actual conviction. On cross, Tunnell attempted to question Sandy about the details of her prior conviction. The result of this inquiry was that Sandy did not remember the specific incident but did remember there was a few times she lied to police regarding incidents with her roommates.

¶17    Tunnell further argues that in *State v. Martin*, 279 Mont. 185, 926 P.2d 1380 (1996), evidence that a witness provided false information to authorities that led to a conviction of unsworn falsification was admissible pursuant to Rule 608(b). We find Tunnell's interpretation of *Martin* incorrect. In *Martin*, this Court found the district court did not

7

abuse its discretion by limiting the cross examination of the witness to the facts surrounding her prior conviction, as allowed by Rule 608(b), and prohibiting introduction of her conviction itself, as barred by Rule 609.

¶18 As such, we find the District Court did not abuse its discretion. The court properly allowed cross examination of Sandy regarding the details of her prior conviction for false reporting, as permitted by M. R. Evid. 608(b). The court also properly prohibited introduction of evidence that Sandy was previously convicted of a crime, as prohibited by M. R. Evid. 609.

¶19 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶20 Affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR